**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**(Alexandria Division)**

| | |
|---|---|
| **RBR-Technologies, Inc.** | |
| **v.** | |
| **SPG Institute, Inc.** | |
| **and** | **CIVIL CASE NO. 1:21-cv-00213** |
| **SP Global, Inc.** | |
| **and** | |
| **Dr. Dan Tolley** | |

**MEMORANDUM OF LAW OF PLAINTIFF, RBR-TECHNOLOGIES, INC. IN**
**SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Plaintiff, RBR-Technologies, Inc. ("RBR"), by and through its undersigned counsel and pursuant to Fed. R. Civ. P. Rule 56 and L. Civ. R. 56b, respectfully moves this Court for Summary Judgment on its claims for Breach of Contract (Count I and Count IV), Unjust Enrichment (Count II), Negligent Misrepresentation (Count III and Count VI), Actual Fraud (Count V), and Piercing the Corporate Veil (Count VII).

## INTRODUCTION

This litigation arises from defendant, SPG Institute, Inc.'s ("SPGI"), breach of contract with RBR, and the fraud perpetrated by executives of SPGI and a related corporate entity, SP Global, Inc. ("SP Global"), including defendant, Dr. Dan Tolley, in an effort to induce RBR to continue to perform under its contract with SPGI for over six (6) months while an outstanding balance of over $1.4 million for services performed by RBR accrued. Despite repeated promises and assurances made by the Defendants to pay RBR the outstanding balance, no such payment has come to fruition as of the date of this filing. At issue in the instant pleading is RBR's request for

this Honorable Court to grant summary judgment on all causes of actions RBR has asserted against SPGI, SP Global, and Dr. Tolley.

## STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

1.      Prior to August 2019, the United States Air Force retained SPGI to design, develop, and provide technical support associated with cloud-based technology in support of artificial intelligence advancement sought by the United States Air Force.  (E.C.F. No. 1 ¶ 8 and E.C.F. No. 16 ¶ 8).

2.      SPGI entered into multiple Subaward Agreements with various entities to assist it with carrying out its obligations and responsibilities under its contract with the United States Air Force.  A copy of the August 5, 2021 deposition testimony of Thomas Burns, designee on behalf of SPGI and SP Global, is attached hereto as Exhibit "A."  (Burns. Dep. Volume I, P. 87, L. 4-8).

3.      On August 1, 2019, SPGI entered into a Cooperative Agreement Subaward ("Subaward") with RBR wherein RBR agreed to provide certain technical support associated with the cloud-based technology development.  The Subaward is attached hereto as Exhibit "B." (E.C.F. No. 1 ¶ 9; E.C.F. No. 16 ¶ 9; Subaward).

4.      The Subaward obligated RBR to provide services in support of the Air Force Cognitive Engine for a two-year period between August 1, 2019 and July 31, 2021.   (E.C.F. No. 1 ¶ 10; E.C.F. No. 16 ¶ 10; Subaward).

5.      In exchange for the performance of those services, SPGI agreed to compensate RBR a total sum of $4,799,435.00. (E.C.F. No. 1 ¶ 10; E.C.F. No. 16 ¶ 10; Subaward).

6.      The Subaward required RBR to invoice SPGI monthly for services provided over the two-year period.  (Subaward § 6 and Attachment B).

2

7.      SPGI, in turn, was obligated to pay RBR within fifteen (15) days of receipt of such monthly invoices.  (Subaward § 6(c)).

8.      SPGI operates as a nonprofit research element to assist with projects being developed by and operated through SP Global.  (Burns Dep. Volume I, P 13, L. 14-22, P. 14, L. 1).

9.      SPGI does not currently and has not ever had any employees.  (Burns Dep. Volume I, P. 12, L. 13-17).

10.     Rather, employees of SP Global were tasked with performing all business functions on behalf of SPGI.  (Burns Dep. Volume I, P. 61, L. 13-17).

11.     Dr. Tolley and Mr. Burns operate as board members of SPGI.  (Burns Dep. Volume I, P. 14, L. 2-13).

12.     Dr. Tolley operates as the President and Chief Technology Officer of SP Global. (Burns Dep. Volume I, P. 30, L. 6-9.).

13.     Mr.  Burns operates as Chairman of the Board of Directors and CEO of SP Global. (Burns Dep. Volume I, P. 24, L. 18-20).

14.     At all relevant times, Mr. Ken Wall operated as the Executive Director of ARCNet at SP Global.  A copy of the deposition testimony of Ken Wall is attached hereto as Exhibit "C." (Wall Dep., P. 1, L. 7-9).

15.     As Executive Director of ARCNet, Mr. Wall was responsible for reviewing and approving invoices RBR submitted to SPGI.  (Burns Dep. Volume I, P. 121, L. 5-9; Wall Dep., P. 13, L. 16-22, P. 14, L. 1-22, P. 15, L. 1-7).

16.     At all relevant times, Ms. Marcia Gross operated as the Contract Manager at SP Global.  A copy of the deposition testimony of Marcia Gross is attached hereto as Exhibit "D." (Gros Dep., P. 22, L. 20-22).

17.     As Contract Manager, Ms. Gross was responsible for reviewing the invoices RBR submitted to SPGI to ensure said invoices were mathematically accurate and represented services RBR was permitted to invoice SPGI per the terms of the Subaward.  (Gross Dep., P. 23, L. 1-22).

18.     After reviewing the invoices for that purpose, Ms. Gross was responsible for submitted the invoices to Mr. Wall for approval.  (Gross Dep., P. 23, L. 1-22).

## No Dispute as to Invoices at Issue

19.     On August 4, 2020, RBR submitted an invoice (the "August 4, 2020 Invoice") to SPGI for services performed between June 15, 2020 and July 12, 2020 for a total amount of $213,867.21.  (E.C.F. No. 1 ¶ 16 and E.C.F. No. 16 ¶ 16).

20.     SPGI has not paid RBR for the August 4, 2020 Invoice. A copy of the August 4, 2021 deposition testimony of Dan Tolley is attached hereto as Exhibit "E."  (E.C.F. No. 1 ¶ 20; E.C.F. No. 16 ¶ 20; Tolley Dep. Volume I, P. 170, L. 14- P. 171, L. 3.; Burns Dep. Volume I, P. 132, L. 8 – P. 133, L.2).

21.     Furthermore, SPGI has failed to pay RBR for any invoice submitted after August 4, 2020, despite each invoice being in the form required by the Subaward. (E.C.F. No. 1 ¶ 21 and E.C.F. No. 16 ¶ 21).

22.     More specifically, RBR has submitted subsequent invoices to SPGI as follows:

a.  August 25, 2020 invoice for the period covering July 13, 2020-August 9, 2020 totaling **$237,450.14**;

b.  October 6, 2020 invoice for the period covering August 10, 2020-September 6, 2020 totaling **$249,689.53**;

    c.    October 23, 2020 invoice for the period covering September 7, 2020-October 4, 2020 totaling **$187,744.22**;

    d.    November 5, 2020 invoice for the period covering October 5, 2020-November 1, 2020 totaling **$210,435.69**;

    e.    December 1, 2020 invoice for the period covering November 2, 2020 - November 29, 2020 totaling **$142,816.01**

    f.    December 30, 2020 invoice for the period covering November 30, 2020-December 27, 2020 totaling **$139,469.97**; and

    g.    January 25, 2021 invoice for the period covering December 28, 2020 – January 24, 2021 totaling **$86,013.82**.

(E.C.F. No. 1 ¶ 22; E.C.F. No. 16 ¶ 22).

23.    It is undisputed that Mr. Wall was responsible for approving RBR's invoices for payment.  (Burns Dep. Volume I, P. 121, L. 5-9[1]; Wall Dep. P. 27, L. 20-P. 28, L. 1).

24.    Mr. Wall approved for payment all of RBR's outstanding invoices totaling $1,467.486.59.  (Wall Dep., P. 118, L. 8-15).

25.    Once Mr. Wall approved the invoices, there were no other conditions precedent required prior to payment being issued to RBR.  (Burns Dep. Volume I, P. 134, L. 1-4; Tolley Dep. Volume I, P. 111, L. 7-17).

26.    SPGI itself acknowledges that the outstanding unpaid invoices RBR submitted to it total **$1,467,486.59**. (E.C.F. No. 1 ¶ 22; E.C.F. No. 16 ¶ 22).

27.    Furthermore, SPGI has admitted that RBR's unpaid invoices totaling $1,467,486.59 are not disputed, and are due and owing to RBR.  (Tolley Dep. Volume I,  P. 170, L. 14- P. 171, L. 3 and Burns Dep. Volume I, P. 132, L. 8 – P. 133, L.2).

---

[1] Mr. Burns was deposed as corporate designee on behalf of SPGI and SP Global; therefore, his testimony binds SPGI and SP Global.

28.     SPGI has indicated it intends to pay RBR for the entirety of its outstanding invoices totaling $1,467,486.59 once it obtains sufficient funds to do so.  (Burns Dep. Volume I, P. 102, L. 13-21).

**SPGI, SPG, and Dr. Tolley Made Material Representations to RBR to Induce RBR to Continue Performing Under the Subaward**

29.     Beginning in September 2020, representatives of SPG and SPGI repeatedly made representations to RBR indicating that RBR would be paid for any and all outstanding invoices.

30.     On September 11, 2020, RBR notified SPGI through Marcia Gross that its August 4, 2020 invoice remained unpaid despite the terms of the Subaward requiring payment to be issued within fifteen (15) days of submission of an invoice.  A copy of an email chain between representatives of RBR and SPGI/SP Global bates stamped RBR 00023-RBR00030 is attached hereto as Exhibit "F."  (RBR 23-27; E.C.F. No. 1 ¶ 24; E.C.F. No. 16 ¶ 21).

31.     Despite SPGI's representations, through Ms. Gross, that a physical check enclosing payment for the August 4, 2020 Invoice had been mailed, RBR received no such check.  (RBR 23-27).

32.     On September 25, 2020, still not having received payment for the invoices RBR submitted on August 4, 2020 and August 25, 2020, RBR again notified SPGI, through Ms. Gross, that no payment had been received for the two outstanding invoices.  (RBR 23-27).

33.     At that time, Ms. Gross indicated she would have to follow up with "corporate" to inquire into the status of the physical checks.  (RBR 23-27).

34.     Ms. Gross' reference to "corporate" referred to SP Global.  (Gross Dep., P. 21, L. 8-16, P. 78, L.9-P.79, L. 6 ).

35.     In spite of SPGI holding the contract with the US Air Force, Ms. Gross and Mr. Wall understood that SP Global – and not SPGI – was the entity holding and controlling the money

6

the Air Force paid SPGI for the purpose of paying subrecipients, including RBR. A document Mr. Wall would use to approve invoices for payment demonstrating that his signature "***authorizes SP Global to issue payment*** to RBR and bates stamped Tolley 856-857 is attached hereto as Exhibit "G." (Tolley 856-857; Gross Dep., P. 21, L. 8-16, P. 78, L.9-P.79, L. 6; Wall Dep., P. 14, L. 13-P. 15, L. 12).

36.     Moreover, Dr. Tolley and Mr. Burns acknowledge that the funds the Air Force paid SPGI for the purpose of paying subrecipients, including RBR, were being controlled by SP Global, and being used to pay the debts and obligations of SP Global. (Tolley Dep. Volume I, P. 114, L. 21-P. 115, L. 7; Burns Dep. Volume I, P. 87, 4-P. 91, L. 16).

37.     Dr. Tolley himself performed most of the transfers of money from SPGI to SP Global. (Tolley Dep., Volume I, P. 93, L. 9-17).

38.     Notably, in September 2020, Ms. Gross failed to provide RBR with any additional information regarding the expected timeline for RBR's receipt of payment, any issues SPGI was having with timely issuing payments to its subrecipients, or SP Global's control of the funds to be used to pay RBR and other subrecipients under SPGI's contract with the Air Force; rather, the issue was simply represented as an "accounting error" that had to be resolved. (RBR 23-27; E.C.F. No. 1 ¶ 25; E.C.F. No. 16 ¶ 25; E.C.F. No. 19 ¶ 25; Wall Dep P. 57, L. 18-P. 58, L. 16; Burns Dep. Volume I, P. 112, L.22-P.115, L. 2).

39.     In spite of same, it was well known by SP Global employees, including Ms. Gross, in September 2020 that SPGI had missed payments to multiple subrecipients SPGI had contracted with to provide services under its contract with the US Air Force. A copy of correspondence detailing complaints as early as June 2020 regarding subrecipients failing to receive payment from SPGI bates stamped Tolley 955-957 is attached hereto as Exhibit "H." (Tolley 955-957).

40.     Such complaints included:

- Dependable Computing on 8/31/20 – "I got the check today!  Thank goodness.  But I'm afraid that it wasn't mailed until after your inquiry.  **The date on the check is August 17, but the postmark on the envelope…is August 28**.  Thanks again for all your help."

- VISIMO on 8/31/20 – "As a small business, VISIMO relies on prompt payment to ensure that we can meet our contractual obligations, and maintain the staff we require to deliver successful on our subaward agreements…we are concerned about our ability to accurately predict when we'll receive payments **since we've put nearly two months of work into this contract without compensation."**

- Intelesense on 9/10/20 – "Just checking on if you have an idea when we might receive reimbursement for this invoice/period?  (Cash flow is everything to a small business)."

(Tolley 955-957) (emphasis added).

41.     Furthermore, prior to September 2020, it was well known by executives of SPGI and SP Global, including Dr. Tolley and Mr. Burns, that timely payments to subrecipients, including RBR, was not going to be possible.  (Tolley Dep. Volume I, Page 112, L. 18-P. 114, L. 19; Burns Dep. Volume I, P. 97, L. 3-P. 99, L. 8, P. 110, L. 8-P.112, L. 3).

42.     Dr. Tolley acknowledges that he anticipated the real potential that timely payments to subrecipients was not going to be possible as early as July 2020, and recognized that there could be a potential delay in payments as early as February 2020; no such information was contemporaneously communicated to RBR.  (Tolley Dep. Volume I, Page 112, L. 18-P. 114, L. 19).

43.     Mr. Burns' concerns about the potential delay in payments to subrecipients began in February 2020, with it ultimately becoming "obvious" to Mr. Burns that timely payments to subrecipients was going to be very difficult in late March/early April 2020; no such information was contemporaneously communicated to RBR.  (Burns Dep. Volume I, P. 97, L. 3-P. 99, L. 8, P. 110, L. 8-P.112, L. 3).

44.     On October 9, 2020, RBR again contacted SPGI regarding the overdue unpaid invoices as it had yet to receive payment for those invoices. (E.C.F. No. 1 ¶ 26; E.C.F. No. 15 ¶ 26; E.C.F. No. 16 ¶ 26).

45.     On that same day, SPGI requested RBR's wire transfer information so that "corporate" could wire payment to RBR for all outstanding invoices. A copy of an email chain detailing same and bates stamped RBR 37-40 is attached hereto as Exhibit "I."  (RBR 37-40; (E.C.F. No. 1 ¶ 27; E.C.F. No. 15 ¶ 27; E.C.F. No. 16 ¶ 27).

46.     RBR understood that SPGI's reference to "corporate" indicated that SP Global would be wiring funds to fulfill SPGI's outstanding debt, particularly because individuals with SP Global's email address domains, including Dr. Dan Tolley, were copied on electronic communications regarding the outstanding payment issue. (E.C.F. No. 1 ¶ 28).

47.     On or about the following day, on October 10, 2020, RBR provided SPGI with its wire transfer information.  (RBR 37-40; E.C.F. No. 1 ¶ 29).

48.     After approximately two weeks transpired and RBR still had not received payment for the outstanding invoices at that time, on or about October 23, 2020, RBR again contacted SPGI inquiring into the status for payment for all outstanding invoices. (RBR 37-40; E.C.F. No. 1 ¶ 30).

49.     Three days later, on or about October 26, 2020, SPGI indicated that "corporate" would be wiring the funds that same day. (RBR 37-40; E.C.F. No. 1 ¶ 31).

50.     Not having received payment by the following day, on or about October 27, 2020, RBR again contacted SPGI to inquire into the status of payment of the outstanding invoices. (RBR 37-40; E.C.F. No. 1 ¶ 33).

51. In verbal communications between RBR and Dr. Tolley, Dr. Tolley indicated that RBR would receive payment on all outstanding invoices before the end of the week of November 8, 2020. (RBR 37-40; E.C.F. No. 1 ¶ 36).

52. Dr. Tolley also represented that SP Global would pay RBR an 18% APY bonus on all outstanding invoices due as a result of the continued issues with payment. (RBR 37-40; E.C.F. No. 1 ¶ 37).

53. On November 12, 2020, RBR, having not received payment on any outstanding invoices, contacted Dr. Tolley to inquire into the status of payment as the week was almost over. RBR 37-40; E.C.F. No. 1 ¶ 38).

54. In verbal communications between RBR and Dr. Tolley, Dr. Tolley indicated that RBR would receive payment on all outstanding invoices before the end of the week of November 15, 2020. (RBR 37-40; E.C.F. No. 1 ¶ 38).

55. RBR did not receive payment before the end of the week of November 15, 2020. (RBR 37-40; E.C.F. No. 1 ¶ 40).

56. On or about November 18, 2020, RBR, having not received payment on its outstanding invoices, contacted Dr. Tolley to inquire into the date and time RBR could expect to receive payment for the outstanding invoices. (RBR 37-40; E.C.F. No. 1 ¶ 40).

57. That same day, Dr. Tolley, from his SP Global email address domain, indicated that payment would be wired no later than 3:30pm on the following day, November 19, 2020. (RBR 37-40; E.C.F. No. 1 ¶ 41; E.C.F. No. 15 ¶ 41; E.C.F. No. 16 ¶ 41).

58. In that same electronic communication, Dr. Tolley reconfirmed that SP Global would pay RBR an 18% APR bonus due to the continued issues with payment.  (RBR 37-40; E.C.F. No. 1 ¶ 42; E.C.F. No. 15 ¶ 42; E.C.F. No. 16 ¶ 42).

59. RBR did not receive payment for any outstanding invoices on November 19, 2020. (RBR 37-40; E.C.F. No. 1 ¶ 43; E.C.F. No. 15 ¶ 43; E.C.F. No. 16 ¶ 43).

60. RBR also did not receive payment for the 18% APR bonus on November 19, 2020. (RBR 37-40; E.C.F. No. 1 ¶ 44; E.C.F. No. 15 ¶ 44; E.C.F. No. 16 ¶ 44).

61. RBR contacted Dr. Tolley on multiple occasions thereafter with similar promised dates by which funds would be received – all of which never came to fruition.  Text message communications between Dr. Tolley and RBR representatives and bates stamped RBR 42-45 are collectively attached hereto as Exhibit "J."  (RBR 42-45).

62. Representatives of SPGI and SP Global made the aforementioned representations with the intent that RBR rely upon them for the purpose to induce RBR to continue its work under the Subaward.

63. SPGI, SP Global and Dr. Tolley admit that the aforementioned representations were made knowing that SP Global had spent the funds SPGI received from the government for other purposes outside of the project at issue.  (Tolley Dep. Volume I, P. 114, L. 21-P. 115, L. 7; Burns Dep. Volume I, P. 87, 4-P. 91, L. 16).

64. During discovery in this case, SPGI and SP Global acknowledge that the foregoing representations regarding the ability to make the outstanding payments to RBR was based solely on the belief that   SP Global would be receiving funding in the amount of $90 million from an investor, Pritt Investment Partners, LLC.  (Burns Dep. Volume I, P. 91, L. 17-P. 93, L. 18).

65. In spite of same, Dr. Tolley was concerned about SP Global's ability to secure such funding from its investor as early as February 2020.  (Tolley Dep. Volume I, Page 112, L. 18-P. 114, L. 19).

66.     SPGI and SP Global also became concerned about SP Global's ability to secure funding through its investor in February 2020, and acknowledge that it became obvious in late March/early April 2020 that it was going to be difficult to secure such funding in a manner as to not impact timely payments to subrecipients, including RBR.  (Tolley Dep. Volume I, Page 112, L. 18-P. 114, L. 19; Burns Dep. Volume I, , P. 97, L. 3-P. 99, L. 8, P. 110, L. 8-P.112, L. 3).

67.     At no point did SPGI, SP Global, or Dr. Tolley inform subrecipients, including RBR, that payment for services would be significantly delayed despite the totality of circumstances evidencing that was the case.  (Burns Dep. Volume I, P. 91, L. 17-P. 95, L. 11, P. 112, L. 22-P. 115, L. 2; Tolley Dep. Volume I, Page 112, L. 18-P. 114, L. 19).

68.     Moreover, Dr. Tolley continued to transfer large sums of funds from SPGI bank accounts to SP Global bank accounts so that SP Global could use that money to cover its own expenses well beyond the time he first became concerned about SP Global's ability to secure funding from its investor.  (Tolley Dep. Volume II, P. 235, L. 12-P. 242, L. 8).

**SPG Failed to Vet its Alleged Investor**

69.     SPGI and SP Global have indicated that Pritt Investment Partners ("Pritt") is the only investor that they were focusing on at the time of the aforementioned representations.  (Burns Dep. Volume I, P. 102, L. 22 – P. 104, L. 7).

70.     SP Global's contact at Pritt Investment Partners, LLC is Scott Tripp. (Burns Dep. Volume I, P. 98, L. 4-14; Tolley Dep. Volume I, P. 41, L. 3-10).

71.     SPG and SPGI have never requested a proof of funds from Pritt.  (Burns Dep. Volume I, P. 100, L. 11- P. 101, L. 3).

72.     SPG and SPGI have never received a proof of funds from Pritt.  (Burns Dep. Volume I, P. 100, L. 11- P. 101, L. 3; Tolley Dep. Volume I, P. 44, L. 6-8).

73.     Despite never receiving a proof of funds, SP Global and SPGI, through their corporate designee Mr. Burns, have never and continue to have no concerns about Mr. Tripp's ability to provide the $90 million investment through Pritt. (Burns Dep. Volume I, P. 101, L. 4-8).

74.     Mr. Tripp through Pritt has not previously invested in any prior projects of Mr. Burns, SP Global, or the related subcompanies of SPG. (Burns Dep. Volume I, P. 101, L. 16-22).

75.     SP Global and SPGI did little, if anything, to vet Pritt and determine if Pritt had the funds available in order to make an investment of $90 million to SP Global.  (Burns Dep. Volume I, P. 100, L. 11- P. 101, L. 3; Tolley Dep. Volume I, P. 44, L. 6-8).

76.     Over the course of the six (6) months while RBR continued performing under the Subaward without payment, there were many occasions upon which SP Global and SPGI believed that transfer of said funds to SPG would be made in the next few  (RBR 37-40; RBR 42-45; E.C.F. No. 1, E.C.F. No. 15; E.C.F. No. 16; Burns Dep. Volume I, P. 91, L. 17-P. 95, L. 11, P. 112, L. 22-P. 115, L. 2; Tolley Dep. Volume I, Page 112, L. 18-P. 114, L. 19).

77.     As of  September 1, 2021, over 18 (eighteen) months after the contemplation of funding from Pritt first occurred in February 2020, SP Global had not received such funding from Pritt.  A copy of the September 1, 2021 deposition testimony of Thomas Burns, designee on behalf of SPGI and SP Global, is attached hereto as Exhibit "K."  (Burns Dep. Volume II, P. 169, L. 1-P. 170, L. 7).

78.     SPGI and SP Global still believe that SP Global will receive funding in the amount of $90 million from Pritt despite repeated promises from Pritt about payment being immediately forthcoming that have failed to come to fruition.  (Burns Dep. Volume II, P. 169, L. 1-P. 170, L. 7).

79.     Pritt Investment Partners, LLC was created in Maryland in January 2020, the month prior to time the initial transfer of funding wa. s anticipated to take place in February 2020.  (Department of State records (https://egov.maryland.gov/BusinessExpress/EntitySearch/Business); Burns Dep. Volume I, , P. 97, L. 3-P. 99, L. 8, P. 110, L. 8-P.112, L. 3).

80.     A basic google search of Pritt Investment Partners, LLC reveals a review suggesting that Mr. Tripp is not a trustworthy investor and is instead a "joke". (https://www.bizapedia.com/md/pritt-investment-partners-llc.html).

81.     A basic google search of Scott H. Tripp reveals that Mr. Tripp was arrested for issuing bad checks in December, 2019, two (2) months prior to when the funding was supposed to be transferred to SP Global. (Criminal record: https://www.herndon-va.gov/home/showdocument?id=12229; December 22, 2019 – bad checks).

82.     Mr. Tripp's LinkedIn page further indicates that he is the "Director of People Standards and Results" at Pritt and has been since February 2019. (https://www.linkedin.com/in/scott-tripp-web).

83.     Mr. Tripp's LinkedIn page indicates that Mr. Tripp is also currently the "Director of People, Standards and Results" of 8 other companies.  (https://www.linkedin.com/in/scott-tripp-web).

84.     A basic google search of Scott H. Tripp reveals that Mr. Tripp has previously been associated with multiple other businesses, such as West End Bridge, LLC. There are numerous negative reviews of Mr. Tripp associated with this company, such as:

   a.  "Several months and nothing still with this clown. Pritt investment partners is his latest scam." (Posted February 5, 2021)

14

    b.   "This guys[sic] a lying, narcissistic scam artist."… "DO NOT DO ANY BUSINESS WITH HIM." (Posted March 30, 2020)

    c.   "I don't think there is any money. I don't think this man can close a loan." (Posted January 16, 2020)

    d.   "Scott has been under investigation with the SECRET SERVICE. Scott is also unable to use his name at closing or his other company, Rogue Property, LLC." (Posted January 14, 2020)

    e.   "Total time waster." (Posted December 3, 2019)

    f.   "fake business do not do business with Mr. Scott Tripp he is a scammer whose aim is to look for business to steal from." (Posted September 29, 2019

    g.   "Scam scam scam scam! Repeat absolute scam!" (Posted March 7, 2019.

(https://www.bizapedia.com/va/west-end-bridge-llc.html).

85.    In spite of the above, SPGI, SP Global, and Dr. Tolley continue to have no concerns about Pritt's ability to fulfill its commitment of funds to SP Global.  A copy of the September 1, 2021 Deposition of Dr. Tolley is attached hereto as Exhibit "L."  (Tolley Dep. Volume II, P. 204, L. 5-P. 206, L. 14; Burns Dep. Volume I, P. 100, L. 11-P. 101, L. 8; Burns Dep. Volume II, P. 169, L. 1-P. 170, L. 7).

86.    Furthermore, at no point did SPGI, SP Global, or Dr. Tolley inform subrecipients, including RBR, that payment for services may be significantly delayed despite being aware of the fact that the funds were coming from foreign investors impacted by the COVID-19 pandemic. (Burns Dep. Volume I, P. 91, L. 17-P. 95, L. 11, P. 112, L. 22-P. 115, L. 2; Tolley Dep. Volume I, Page 112, L. 18-P. 114, L. 19).

87.    Moreover, at no point did SPGI, SP Global, or Dr. Tolley inform subrecipients, including RBR, that payment for outstanding invoices was solely conditioned on SP Global's receipt of funds from an investment group that has failed to provide a proof of funds.  (Burns Dep.

Volume I, P. 91, L. 17-P. 95, L. 11, P. 100, L. 11- P. 101, L. 3, P. 112, L. 22-P. 115, L. 2; Tolley

Dep. Volume I, P. 44, L. 6-8, P. 112, L. 18-P. 114, L. 19).

## LEGAL ARGUMENT

### A.  Standard of Review

Under Rule 56 of the Federal Rules of Civil Procedure, "[t]he Court shall grant summary

judgment if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a); *Vienna Metro LLC v.*

*Pulte Home Construction*, 786 F. Supp. 2d 1076, 1081 (E.D. Va. 2011); *see also McKinney v. Bd.*

*of Trustees of Md. Cmty. Coll.*, 955 F.2d 924, 928 (4th Cir.1992) ("[s]ummary judgments should

be granted in those cases where it is perfectly clear that no issue of fact is involved and inquiry

into the fact is not necessary to clarify the application of the law.") (citations omitted).

Because there are no material facts in dispute here, summary judgment in favor of each of

RBR's claims in the Complaint should be granted. *See Matsushita Elec. Indus. Co. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 587 (1986) ("where the record taken as a whole cannot lead a rational trier

of fact to find for the non-moving party, no genuine exists for trial and summary judgment is

appropriate.") "Mere unsupported speculation is not sufficient to defeat a summary judgment

motion if the undisputed evidence indicates that the other party should win as a matter of law."

*Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008).

Once a motion for summary judgment is properly made and supported, the opposing party

"must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*,

475 U.S. at 586–87 (internal quotations omitted).  "Genuineness means that the evidence must

create fair doubt; wholly speculative assertions will not suffice." *Ross v. Commc'ns Satellite Corp.*,

759 F.2d 355, 364 (4th Cir.1985); *see also Ash v. United Parcel Serv., Inc.*, 800 F.2d 409, 411–12

(4th Cir.1986) (noting that the nonmoving party must offer more than unsupported speculation to withstand a motion for summary judgment). Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548 (1986).

Where no genuine issues of material fact exist, it is the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), quoted in *Philip Morris USA, Inc. v. Appalachian Fuels LLC*, 2009 U.S. Dist. LEXIS 31765, *12-13 (E.D. Va. April 15, 2009). Accordingly, summary judgment should be granted in factor of each of RBR's claims in the Complaint.

### B. Summary Judgment Should be Granted on RBR's Breach of Contract Claim Against SPGI (Count I).

This Court should grant RBR's Motion for Summary Judgment on its claim for breach of contract against SPGI because the Contract is a valid, enforceable written agreement that SPGI breached by failing to fulfill its payment obligations as set forth in the parties' agreement, resulting in substantial damages to RBR.

"To establish a breach of contract claim under Virginia law, a plaintiff must prove: "(1) a legally enforceable obligation of [the] defendant to [the] plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach or obligation." *Gitter v. Cardiac & Thoracic Surgical Associates, Ltd.*, 338 Fed. Appx. 348, 349 (4th Cir. 2009) (quoting *Filak v. George*, 594 S.E.2d 610, 614 (Va. 2004)).

There is no dispute in the instant litigation that a valid contract between SPGI and RBR was in effect and enforceable at the relevant time.  (Tolley Dep. Volume I,  P. 170, L. 14- P. 171, L. 3 and Burns Dep. Volume I, P. 132, L. 8 – P. 133, L.2).  There is also no dispute that the invoices

17

at issue were submitted in the proper format and included only those fees and services that RBR was permitted to invoice SPGI for per the Subaward.  (Tolley Dep. Volume I,  P. 170, L. 14- P. 171, L. 3 and Burns Dep. Volume I, P. 132, L. 8 – P. 133, L.2).  Mr. Wall, who was responsible for reviewing and approving RBR's invoices for payment, testified that he approved all of RBR's outstanding invoices for payment.  (Wall Dep. P. 27, L. 20-P. 28, L. 1, P. 118, L. 8-15; Burns Dep. Volume I, P. 134, L. 1-4; Tolley Dep. Volume I, P. 111, L. 7-17).  Moreover, SPGI and SP Global admit that payment for the outstanding invoices is due and owing to RBR, and do not contest that RBR is entitled to payment for said invoices.  (E.C.F. No. 16 ¶ 22; (Burns Dep. Volume I, P. 102, L. 13-21, P. 134, L. 1-4).  As such, there is no dispute that SPGI has breached its obligation to pay RBR in accordance with the Subaward.  Moreover, it is not in dispute that RBR has sustained monetary damage as a result of SPGI's failure to pay RBR per the terms of the Subaward.  (Burns Dep. Volume I, P. 102, L. 13-21, P. 134, L. 1-4.; Tolley Dep. Volume I, P. 111, L. 7-17).  In fact, Mr. Burns testified that as soon as SP Global is in possession of sufficient funds, it intends to pay RBR in full for the entirety of its outstanding invoices.  (Burns Dep. Volume I, P. 102, L. 13-21).

Where, as here, the record is clear that there was a legally enforceable obligation of Defendant SPGI to pay RBR, which Defendant SPGI admittedly breached, resulting in damages to RBR, no genuine issues of material fact exist.  As such, RBR respectfully requests summary judgment be entered on its Breach of Contract claim against SPGI.

**C.** **Summary Judgment Should be Granted on RBR's Unjust Enrichment Claim Against SPGI (Count II[2]).**

No genuine issues of material fact exist for trial on RBR's Unjust Enrichment claim; therefore, summary judgment should be entered in RBR's favor on that claim.

An unjust enrichment claim is a "plaintiff's remedy at law when the facts establish that a defendant has been unjustly enriched at the expense of the plaintiff, but where the facts fail to establish that the parties established any form of agreement." *Nossen v. Hoy*, 750 F. Supp. 740 (E.D. Va. 1990). Under Virginia law, in order to prevail on a claim for unjust enrichment, a plaintiff must prove: (a) the plaintiff has conferred a benefit on the defendant; (b) the defendant has knowledge of the benefit being conferred; and (c) the defendant has retained the benefit under circumstances "that render it inequitable" for the defendant to do so. *Firestone v. Wiley*, 485 F. Supp. 2d 694, 704 (E.D. Va. 2007). The purpose of this quasi-contract action is to ensure "that a man shall not be allowed to enrich himself unjustly at the expense of another". *Kern v. Freed Co.,* 224 Va. 678, 299 S.E.2d 363, 365 (1983).

Here, it is undisputed that SPGI received the services performed by RBR. (Wall Dep. P. 27, L. 20-P. 28, L. 1, P. 118, L. 8-15; Burns Dep. Volume I, P. 134, L. 1-4; Tolley Dep. Volume I, P. 111, L. 7-17). To permit SPGI to receive the services performed by RBR, without compensating RBR for these services would be manifestly inequitable. Furthermore, the Fourth Circuit has recognized actions for quasi-contract based on a "reasonable expectation theory." *Nossen*, 750 F. Supp. At 745. "Under this doctrine, one of three things must be true to recover in quasi-contract: (1) The plaintiff had a reasonable expectation of payment; (2) The defendant should

---

[2] This cause of action is pled in the alternative to RBR's breach of contract claim against SPGI (Count I). As such, RBR only seeks summary judgment on Count II should this Honorable Court decline to grant summary judgment on Count I.

reasonably have expected to pay; or (3) society's reasonable expectations of security of person and property would be defeated by nonpayment." *Id.* (citing *Provident Life & Acc. Ins. v. Waller,* 906 F.2d 985, 993 (4th Cir.1990); *Corbin on Contracts,* § 19A, at 59). All of the aforementioned elements are present in this case. RBR reasonably expected to be paid for the work performed based on the numerous representations made. (RBR 23-27; RBR 37-40).   Moreover, SPGI reasonably expected to pay RBR for these services and it clearly made representations to RBR that it intended to pay for these services.  (Wall Dep. P. 27, L. 20-P. 28, L. 1, P. 118, L. 8-15; Burns Dep. Volume I, P. 134, L. 1-4; Tolley Dep. Volume I, P. 111, L. 7-17).   Lastly, society's expectation that one would be paid for services rendered, where there is no dispute as to the fact that the services were performed and there were no issues with said services, would be defeated if SPGI were not required to pay for these services.

Accordingly, no genuine issues of material facts exist on RBR;s Unjust Enrichment claim. Therefore, RBR respectfully requests this Honorable Court enter summary judgment on RBR's claim for Unjust Enrichment.

### D.   Summary Judgment Should be Granted on RBR's Fraud Claim Against SP Global Dr. Dan Tolley (Count V)

Summary judgment should be granted on RBR's Fraud claim as no genuine issues of material fact exist for trial.

To prevail on an actual fraud claim under Virginia law, a plaintiff must prove: "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party mislead, and (6) resulting damage to the party misled." *Evaluation Research Corp. v. Alequin*, 247 Va. 143, 439 S.E.2d 387, 390 (Va. 1994).

A concealment or omission of a material fact may also give rise to a claim of actual fraud. *Norris v. Mitchell*, 255 Va. 235, 495 S.E.2d 809 (Va. 1998).  "Concealment of a material fact by

one who knows that the other party is acting upon the assumption that the fact does not exist constitutes actionable fraud." *Allen Realty Corp. v. Holbert*, 227 Va. 441, 318 S.E.2d 592, 597 (Va. 1984). For purposes of an action for fraud, concealment, whether by word or conduct, may be the equivalent of a false representation because it involves deliberate nondisclosure designed to prevent another from learning the truth. *See Van Deusen v. Snead* , 247 Va. 324, 441 S.E.2d 207, 209 (Va. 1994). Furthermore, one's willful nondisclosure of a material fact that he knows is unknown to the other party may be used as evidence of an intent to engage in actual fraud against the other party. *Id*.

Under Virginia law, silence can constitute concealment where there is a duty to disclose. *Bank of Montreal v. Signet Bank*, 193 F.3d 818, 827 (4th Cir. 1999). A duty to disclose facts may exist under specific circumstances, including when disclosure is necessary to clarify information already disclosed that without such clarification would be misleading. *Doe by & Through Doe v. Baker*, 299 Va. 628, 857 S.E.2d 573, 590 (2021).

A statement regarding future action or events can support an action for actual fraud. *Supervalu, Inc. v. Johnson*, 276 Va. 356, 36-68, 666 S.E.2d 335, 342 (2008). However, if a party makes a promise with a contemporaneous intent not to perform the promise, the statement can support an actual fraud claim. *Id*.; *see also Colonial Ford Truck Sales, Inc. v. Schneider*, 228 Va. 671, 677, 325 S.E.2d 91, 94 (1985) (noting that while failure to perform a promise does not itself constitute fraud, but acknowledging that an actionable cause of fraud occurs when the promisor's state of mind is such that when he make the promise, he intends not to perform for the purpose of inducing another to act to that person's detriment).

In the instant litigation, the record submitted clearly shows that SP Global and Dr. Tolley committed actual fraud against RBR. SP Global, through its employees and executives, including

21

Dr. Tolley, knowingly and intentionally made numerous false representations to RBR of material facts – both affirmative representations and representations based on omissions – for the sole purpose of inducing RBR to continue performing services under the Subaward, resulting in damages to RBR.

More specifically, SP Global and Dr. Tolley falsely represented that the lack of payment to RBR was due to a simple "accounting error." (RBR 23-27; E.C.F. No. 1 ¶ 25; E.C.F. No. 16 ¶ 25; E.C.F. No. 19 ¶ 25 ; Wall Dep P. 57, L. 18-P. 58, L. 16; Burns Dep. Volume I, P. 112, L.22-P.115, L. 2).  However, at that time that statement was communicated to RBR, Dr. Tolley, SPGI and, SP Global were already well aware that SP Global had used the money the US Air Force had paid SPGI for the purpose of paying subrecipients, including RBR, for business expenses and costs of SP Global.  (Tolley Dep. Volume I, P. 114, L. 21-P. 115, L. 7; Burns Dep. Volume I, P. 87, 4-P. 91, L. 16).  As such, the representation that the lack of payment was due to an "accounting error" was materially false, made with SPGI, SP Global and Tolley's actual knowledge that it was false.

Additionally, Dr. Tolley and representatives on behalf of SPGI and SP Global consistently represented that payment would be imminently forthcoming for all outstanding invoices over a period of six (6) months to RBR.  (RBR 23-27; RBR 37-40, E.C.F. No. 1; E.C.F. No. 15, E.C.F. No. 16).  However, at that time those statements were made, Dr. Tolley, SPGI, and SP Global knew that there was a substantial issue regarding SPGI's ability to timely pay subrecipients due to a cashflow problem, and Dr. Tolley, SPGI and SP Global knew this information for months prior to these representations being made.  (Tolley Dep. Volume I, Page 112, L. 18-P. 114, L. 19; Burns Dep. Volume I, P. 97, L. 3-P. 99, L. 8, P. 110, L. 8-P.112, L. 3).

Furthermore, Dr. Tolley, SPGI, and SP Global acknowledge that SPGI would only be able to make the outstanding payments to RBR upon an infusion of funds in the amount of $90 million from an investor, Pritt Investment Partners, LLC.  (Burns Dep. Volume I, P. 91, L. 17-P. 93, L. 18).  At the time the statements were made to RBR that payment would be imminently forthcoming for all outstanding invoices over the relevant six-month period – payment that could only be made upon an infusion of funds from an investor - SPG and SPGI have never received a proof of funds from Pritt.  (Burns Dep. Volume I, P. 91, L. 17-P. 95, L. 11, P. 100, L. 11- P. 101; Tolley Dep. Volume I, P. 44, L. 6-8).  Based on a totality of the circumstances, it was unreasonable for SPGI, SP Global, or Dr. Tolley to reasonably believe that receipt of the investment funds was imminent.  Moreover, at no point did SPGI, SP Global, or Dr. Tolley inform subrecipients, including RBR, that payment for services may be significantly delayed due to the fact that the funds were coming from foreign investors impacted by the COVID-19 pandemic.  (Burns Dep. Volume I, P. 91, L. 17-P. 95, L. 11, P. 112, L. 22-P. 115, L. 2; Tolley Dep. Volume I, Page 112, L. 18-P. 114, L. 19).  Each of the foregoing representations were material, and were intentionally made by SPGI, SP Global and Dr. Tolley despite the knowledge that the representations were false.

SP Global and Dr. Tolley intended to mislead RBR as evidenced by its affirmative statements and statements of omissions.  *See Van Deusen v. Snead* , 247 Va. 324, 441 S.E.2d 207, 209 (Va. 1994); *Doe by & Through Doe v. Baker*, 299 Va. 628, 857 S.E.2d 573, 590 (2021).  Those affirmative statements include representations that payment was imminently going to be available despite concerns for months prior thereto that timely payments to subrecipients was likely not going to occur.  (Tolley Dep. Volume I, Page 112, L. 18-P. 114, L. 19; Burns Dep. Volume I, P. 97, L. 3-P. 99, L. 8, P. 110, L. 8-P.112, L. 3).  They also include statements that the payment issues were simply due to an accounting error despite SP Global and Dr. Tolley being fully aware that

the funds paid by the US Air Force to SPGI which were earmarked for the sole purpose of paying subrecipients including RBR had already been squandered.  (Tolley Dep. Volume I, P. 114, L. 21-P. 115, L. 7; Burns Dep. Volume I, P. 87, 4-P. 91, L. 16).

In addition to the aforementioned affirmative statements, SPGI, SP Global and Dr. Tolley failed to communicate to RBR that SPGI's ability to pay RBR's outstanding invoices was solely premised upon an investment by a foreign investor that SP Global and R. Tolley were aware was going to be delayed due to the COVID-19 pandemic, in addition to being aware that they had done nothing to properly vet the investor and for which they did not have proof of funds.  (Burns Dep. Volume I, P. 91, L. 17-P. 95, L. 11, P. 112, L. 22-P. 115, L. 2; Tolley Dep. Volume I, Page 112, L. 18-P. 114, L. 19).  They also failed to inform RBR of the extent of the alleged "accounting error" as evidenced by SPGI's inability to timely pay various other subrecipients on the project. (Tolley 955-957).

RBR relied on those statements made by SPGI, SP Global, and Dr. Tolley in continuing to perform under the Subaward through January 2021.  (E.C.F. No. 1 ¶ 22; E.C.F. No. 16 ¶ 22). Moreover, RBR's reliance on those statements caused it to sustain financial damage in the form of those still outstanding invoices totaling over $1.4 million.  (E.C.F. No. 1 ¶ 22; E.C.F. No. 16 ¶ 22).

The record is clear that SP Global and Dr. Tolley committed actual fraud against RBR, and no genuine issues of material fact exist for trial.  Therefore, RBR respectfully requests this Honorable Court enter summary judgment on its Fraud claim.

**E.** **Summary Judgment Should be Granted on RBR's Negligent Misrepresentation Claims Against SPGI, SP Global and Dr. Dan Tolley (Counts III and VI)**

Virginia law also recognizes an action for fraud where misrepresentations are made without specific fraudulent intent, but are made with reckless abandon and disregard for the truth – a claim

for negligent misrepresentation. *See Bradley v. Tolson*, 117 Va. 467, 85 S.E. 466, 467 (Va. 1915). "The essence of constructive fraud is negligent misrepresentation." *Richmond Metropolitan Authority v. McDevitt Street Bovis, Inc.,* 256 Va. 553, 559, S.E.2d 344 (1998). The Virginia courts have treated such allegations of negligent misrepresentation as the basis for a constructive fraud claim. *Id.* at 558-59. Fraud based on a misrepresentation differs only from actual fraud in that the misrepresentation of material fact is not made with the intent to mislead, but is made negligently. *Evaluation Rsch. Corp. v. Alequin*, 247 Va. 143, 439 S.E.2d 387 (1994).

It is clear that SPGI, SP Global, and Dr. Tolley made negligent misrepresentations to RBR. Such statements were made with regards to the infusion of funds from Pritt that SP Global anticipated to receive, which SPGI claimed it ultimately intended to use to pay RBR's outstanding invoices. While SPGI, SP Global and Dr. Tolley indicated that they made their representations regarding payment to RBR on the belief that they would be able to make payments upon receipt of the investment from Pritt, SPGI's, SP Global's and Dr. Tolley's reliance on this investment was not reasonable. SPGI, SP Global and Dr. Tolley took no steps to adequately vet Pritt prior to relying on Pritt's anticipated investment as its sole ability to pay RBR's outstanding invoices. SPGI, SP Global, and Dr. Tolley did not secure a proof of funds from Pritt that would evidence its ability to pay the $90+ million that SPGI intended to use to pay RBR's outstanding invoices. (Burns Dep. Volume I, P. 100, L. 11- P. 101, L. 3; Tolley Dep. Volume I, P. 44, L. 6-8). SPGI, SP Global, and Mr. Burns have had no prior relationship or business dealings with Pritt or Mr. Tripp that would provide SPGI, SP Global, or Dr. Tolley with a basis for failing to secure such a proof of funds. (Burns Dep. Volume I, P. 100, L. 11- P. 101, L. 3; Tolley Dep. Volume I, P. 44, L. 6-8). In fact, Pritt was formed one short month before it was to provide its initial funding to SP Global in February 2020. (https://egov.maryland.gov/BusinessExpress/EntitySearch/Business); Burns Dep.

Volume I, , P. 97, L. 3-P. 99, L. 8, P. 110, L. 8-P.112, L. 3).  Mr. Tripp has at least one arrest for issuing bad checks – an arrest that was made a short two months before Pritt was to provide its initial funding to SP Global in February 2020.  (Criminal record: https://www.herndon-va.gov/home/showdocument?id=12229; December 22, 2019 – bad checks).  Furthermore, basic Google searches on Pritt at a minimum raise concerns about Pritt's ability to secure and deliver the $90+ million it has committed to SP Global.  (https://www.bizapedia.com/md/pritt-investment-partners-llc.html).  As such, SPGI's, SP Global's and Dr. Tolley's belief that the investment from Pritt was imminent was not reasonable.

Because SPGI, SP Global, and Dr. Tolley's reliance on the Pritt investment ever coming to fruition, or at a minimum that it was imminent, was not reasonable, SPGI, SP Global and Dr. Tolley's representations regarding payment were made negligently – with a reckless disregard for the truth. Such representations were made for the sole purpose of RBR's reliance thereon to continue performing under the Subaward.  RBR sustained damage in the form of its yet-to-be-paid invoices totaling over $1.4 million.

There are no genuine issues of material fact as to the negligent misrepresentations made by SPGI, SP Global, and Dr. Tolley.  As such, RBR respectfully requests this Honorable Court enter summary judgment on its Negligent Misrepresentation claims.

**F.   Summary Judgment Should be Granted on RBR's Breach of Contract Claim Against SP Global, as Guarantor of SPGI's Debts (Count IV)**

Under Virginia law, a guaranty is an independent contract in which a guarantor agrees to assume responsibility for a debt in the event the primary obligor fails to pay. *Wells Fargo Bank, N.A. v. Morton & Morton, LLC*, No. 829, 2011 WL 1306479 (E.D.Va. Apr. 1, 2011) (citing *McDonald v. Nat'l Enters., Inc.*, 262 Va. 184, 189, 547 S.E.2d 204, 207 (2001)). To recover on a guaranty, a plaintiff must prove (1) the existence of the guaranty agreement; (2) the

terms of the primary obligation; (3) default on the obligation by the primary obligor; and (4) nonpayment of the amount due from the guarantor under the guaranty contract. *Id*.

Dr. Tolley, in his role as President and Chief Technology Officer of SP Global, created a guarantee obligation on behalf of SP Global via his promises to fulfill the debts and obligations to pay RBR its outstanding invoices.  By his multiple telephone and electronic communications via his SP Global domain address, Dr. Tolley represented that SP Global would ensure that RBR was paid for its outstanding invoices.  (RBR 37-40; RBR 42-45; E.C.F. No. 1; E.C.F. No. 15; E.C.F. No. 19).  It was well known that SP Global – and not SPGI – controlled the money that the US Air Force paid SPGI for services to be performed by subrecipients, including RBR.  (Tolley 856-857; Gross Dep., P. 21, L. 8-16, P. 78, L.9-P.79, L. 6; Wall Dep., P. 14, L. 13-P. 15, L. 12).  Dr. Tolley himself testified that SP Global controlled that   money. (Tolley Dep. Volume I, P. 114, L. 21-P. 115, L. 7; Burns Dep. Volume I, P. 87, 4-P. 91, L. 16).   Moreover, internal SPGI/SP Global documents specifically indicate that approval of RBR's invoices triggered the release of funds from SP Global and not SPGI. (Tolley 856-857.

The terms of the Subaward and SPGI's failure to pay RBR all amounts due to RBR under the Subaward are not contested.  (Burns Dep. Volume I, P. 102, L. 13-21). Lastly, there is no dispute as to the fact that RBR's outstanding invoices have not been paid. (Tolley Dep. Volume I, P. 170, L. 14- P. 171, L. 3 and Burns Dep. Volume I, P. 132, L. 8 – P. 133, L.2).  As such, no genuine issues of material fact exist as to whether SP Global, as a guarantor for SPGI's debt, breached its contract with RBR.

Because there is no genuine issue of material fact as to SP Global's function as a guarantor of SPGI's debts, RBR respectfully requests summary judgment be entered on its Breach of Contract as Guarantor claim.

### G. Summary Judgment Should be Granted on RBR's Piercing the Corporate Veil (Count VII)

Lastly, RBR requests that the Court pierce the corporate veil and enter judgment against SP Global and Dr. Tolley on its claims. Applying Virginia law, "a court may pierce the corporate veil to find that an individual is the alter ego of a corporation where it finds (i) a unity of interest and ownership between the individual and the corporation, and (ii) that the individual used the corporation to evade a personal obligation, to perpetrate fraud or a crime, to commit an injustice, or to gain an unfair advantage." *Newport News Holdings Corp. v. Virtual City Vision, Inc.*, 650 F.3d 423, 434 (4th Cir. 2011) (quoting *C.F. Trust, Inc. v. First Flight Ltd. P'ship*, 306 F.3d 126, 132 (4th Cir. 2002)) (internal quotation omitted).

The Supreme Court of Virginia has set forth certain factors to be considered when determining whether a unity of interest and ownership exists under the first prong, which include: "(1) comingling of personal and corporate funds; (2) siphoning business assets into personal pockets or accounts; (3) undercapitalization of the business; and (4) whether business formalities were observed." *McCarthy v. Giron*, 2014 WL 2696660, at *15 (E.D. Va. June 6, 2014) (citing *C.F. Trust Inc.,* 140 F.Supp.2d at 648).

To make a finding under the second factor, courts ultimately must determine "if there was a legitimate business purpose for the conduct in question." *Id.* (citing *C.F. Trust, Inc. v. First Flight Ltd. P'ship*, 140 F. Supp. 2d 628, 643 (E.D. Va. 2001)). Moreover, in the absence of a valid business reason for the conduct at issue, "the Court may conclude that the Defendants were using the corporate form improperly." *Id.*

Each of Dr. Tolley's misrepresentations, on behalf of SP Global and himself, were false at the time they were made because Dr. Tolley knew or should have known that SPGI and SP Global was unable and therefore never intended to pay RBR's invoices as evidenced by the totality of the

circumstances, as more fully described above.   The corporate funds of SPGI and SP Global, Inc. were inappropriately comingled.  (Tolley Dep. Volume I, P. 114, L. 21-P. 115).  Dr. Tolley himself performed most of the fund transfers from SPGI bank accounts to SP Global accounts.  (Tolley Dep., Volume I, P. 93, L. 9-17).  Moreover, Dr. Tolley continued to transfer large sums of funds from SPGI bank accounts to SP Global bank accounts so that SP Global could use that money to cover its own expenses well beyond the time he first became concerned about SP Global's ability to secure funding from its investor in February 2020– including one transfer in June 2020 of roughly $6.5 million.  (Tolley Dep., Volume I, P. 93, L. 9-17; Tolley Dep. Volume II, P. 235, L. 12-P. 242, L. 8).  Due to Dr. Tolley continuing to transfer large sums of money from SPGI accounts to SP Global, with no legitimate business purpose, SPGI was left undercapitalized. Indeed, while the US Air Force specifically paid SPGI for services to be performed by subrecipients, including RBR, Dr. Tolley transferred these funds to SP Global and thereafter squandered those funds, leaving SPGI without the ability to pay its debts, including amounts owed to RBR. Lastly, Dr. Tolley refused to respect the business purposes and formalities of SPGI and SP Global.  (Tolley Dep., Volume I, P. 93, L. 9-17; Tolley Dep. Volume II, P. 235, L. 12-P. 242, L. 8). As such, Dr. Tolley and SP Global acted as the alter egos of SPGI based upon the unity of interest and ownership set forth above.

Dr. Tolley has used his control over SP Global, as President and Chief Technology Officer, to engage in actual and constructive fraud against RBR.  Further, he has used his control over SP Global to insulate himself from any liability or judgments.  As set forth above, Dr. Tolley's actions of transferring large sums of money from SPGI accounts to SP Global's, without a legitimate business purpose, left SPGI without any funds to pay its subrecipients, including RBR. These actions were made knowingly by Dr. Tolley.

As such, there is no genuine issue of material fact that summary judgment should be granted on RBR's claim for Piercing the Corporate Veil against SP Global and Dr. Tolley.

## <u>CONCLUSION</u>

For all these reasons, RBR respectfully requests that this Court enter an Order granting its Motion for Summary Judgment and entering judgment in its favor on each of RBR's claims in the Complaint.

<u>Respectfully submitted,</u>

/s/ Mark E. Shaffer
Mark E. Shaffer (VSB No. 75407)
Offit Kurman
8000 Towers Crescent Drive, Suite 1400
Tysons Corner, Virginia 22182
Telephone: 703.745.1820
Facsimile:  703.745.1835
mark.shaffer@offitkurman.com

Justine A. Baakman, Esquire *(Pro Hac Vice)*
Attorney for RBR-Technologies, Inc.
Offit Kurman, P.C.
1801 Market Street, Suite 2300
Philadelphia, PA  19103
Direct: (267) 338-1311
FAX: (267) 338-1335
Justine.Baakman@offitkurman.com

Edward T. DeLisle *(pro hac vice)*
Offit Kurman, P.A.
401 Plymouth Road, Suite 100,
Plymouth Meeting, PA, 19462
Tel. 267-388-1321
Fax. 267-338-1335
edelisle@offitkurman.com

*Counsel for Plaintiff RBR-Technologies, Inc.*

30

## **CERTIFICATE OF SERVICE**

I hereby certify that on 15 September 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF/Pacer system, which will then send a notification of such filing (NEF) to all counsel of record.

Kyung (Kathryn) Dickerson, Esquire
8045 Leesburg Pike, Suite 540
Vienna, VA 22182
703-790-1900
703-790-1754 (facsimile)
kndickerson@smolenplevy.com
*Counsel for SP Global, Inc. and SPG Institute, Inc.*

Christie A. Leary
Law Offices of Christine A. Leary PC
10476 Armstrong Street
Fairfax, VA 22030
703-359-7111
703-543-5478 (facsimile)
Christine.Leary@leary-law.com
*Counsel for Dr. Dan Tolley*


/s/ Mark E. Shaffer
Mark E. Shaffer


4848-0651-1611, v. 2